## HOLLADAY *v.* KENNARD.

1. During the late civil war the defendant was proprietor of a stage and express line upon the overland route to California. The stage was attacked by Indians and robbed of its contents, amongst which was a safe containing money of the plaintiff below. The judge charged the jury, in determining what was the duty of the express agent at that time, to inquire what a cool, self-possessed, prudent, careful man would have done with his own property under the same circumstances; that it was the defendant's duty to provide such a man for this hazardous business. *Held*, that the charge was not erroneous; that it only required of the defendant what might be called ordinary care and diligence under the special circumstances of the case.

2. What is ordinary negligence depends on the character of the employment. Where skill and capacity are required to accomplish an undertaking, it would be negligence not to employ persons having those qualifications.

3. When goods in the hands of a common carrier are threatened to be destroyed or seized by a public enemy, he is bound to use due diligence to prevent such destruction or seizure.

4. It is not necessary that he should be guilty of fraud or collusion with the enemy, or wilful negligence, to make him liable; ordinary negligence is sufficient.

ERROR to the Circuit Court for the Southern District of New York.

This was an action of trespass on the case against one

Holladay as a common carrier, for the loss of a package of money delivered to his agent at Atchison, in Kansas, on the 2d of January, 1865, to be carried to Central City, in Colorado Territory. The defendant was the proprietor of the overland stage line, which was then engaged in the transportation of passengers and goods from Atchison to Placerville, in California, as a part of the great through mail line across the continent. The package in question was delivered to the United States Express Company in New York, which forwarded it to Atchison and there delivered it to the defendant's agent. It was placed in a safe made of leather and iron, and carried in the stage in charge of an express agent in the defendant's employ. At the time of the loss there were no persons in the stage but this express agent and the driver. The loss occurred by the stage being robbed by hostile Indians at Julesburg, on the morning of the 7th of January.

The civil war at this period was still pending, and the Sioux, Cheyennes, and Arapahoes were hostile to the United States, and were constantly committing outrages against persons and property whilst crossing the plains between Missouri and California. It required much courage, coolness, and vigilance to carry on the business of transportation by the overland route.

Julesburg at that time was a station of the express line, consisting of a log house and stable, a telegraph office and warehouse, occupied by three or four persons in charge. About a mile east of Julesburg was a mud house, called Bulin's ranch. About a mile west of Julesburg was a military post, occupied by about forty United States troops, under command of Captain O'Brien, and consisting of an "adobe" building about fifty feet long, with several outbuildings, and provided with two or three pieces of light ordnance.

About two o'clock in the morning, when three or four miles east of Julesburg, the stage was fired into by the Indians. Making what speed they could the express agent and driver reached Bulin's ranch with the stage, staid there

till daylight, and then went on to Julesburg, where they changed horses. They then proceeded to the military post and informed Captain O'Brien that they had been attacked by Indians, and the express agent requested him to give them an escort to protect the stage on its further progress. The captain said he could not give them an escort, as he had but forty men on duty, and was then mounting them to go and fight the Indians, who were in sight, and told the agent to remain where he was, as it would not be safe for him to go up the road. He then went with his command to engage the Indians, who, he said, were about fifteen hundred in number. After the troops had left the post the express agent changed the mail there and then returned to Julesburg and had the horses put into the stable. They had not been put out more than fifteen minutes when the Indians were observed coming towards the station following the troops, fourteen of whom had been killed. There being no time to hitch the horses to the stage, the driver and express agent mounted each a horse and followed the soldiers back to the military post. The Indians stopped at the station, robbed the stage, and broke open the safe and rifled it of its contents. The troops soon brought their howitzers to bear on the savages and compelled them to retire to the hills.

Upon this evidence the court instructed the jury that the attack of the Indians was that of a public enemy, and that defendant was exonerated from the ordinary responsibility of a common carrier, and was not liable for the loss of the money unless his agents were guilty of some carelessness, negligence, or want of vigilance or attention, which contributed to the loss. The plaintiff below contended that they were guilty of carelessness and negligence, *first*, in leaving the military post after being charged by Captain O'Brien to remain there; *secondly*, in unhitching and putting out the horses, on going back to Julesburg. These points were left, and as this court said " very properly left," to the jury as questions of fact. But in giving the jury instructions on this subject the presiding judge told them:

"In determining what was the duty of the express agent at

that time, I can lay down no better rule for your guidance than this: What, in your judgment, would a cool, self-possessed, prudent, careful man have done with his own property under the same circumstances? . . . Such a man it was the duty of Mr. Holladay to provide for this very hazardous business. It was his duty to provide a cool, self-possessed man, a cautious, prudent man; a man of good judgment and forethought."

Adverting also to the fact that the evidence showed, that if the express agent had taken the advice of Captain O'Brien the stage would not have been robbed, the court added:

"*But the result is not the criterion by which you are to judge.*"

The defendant's counsel, notwithstanding the language above quoted in italics, regarding the instruction previously given as contrary to law, and as exacting too much from the defendant, at the trial requested the judge to charge,

*First.* That the capture of the package by the Indians threw on the plaintiff the burden of proving fraud or collusion of the carrier with the captors.

*Secondly.* That if the jury believed that the express agent exercised his best judgment at Julesburg, the defendant could not be charged with negligence.

*Thirdly.* That wilful negligence is required to charge a carrier who has lost property by the act of the public enemy.

The judge declined to charge the jury on these points otherwise than he had done in the course of his address to the jury, and verdict and judgment having gone against the defendant he brought the case here.

*Mr. H. M. Ruggles, for the plaintiff in error; Messrs. W. W. McFarland and Joseph La Roque, contra.*

Mr. Justice BRADLEY, having stated the case, delivered the opinion of the court.

The effect of the charge, as delivered, was, that although a common carrier is not responsible for the destruction or loss of goods by the act of a public enemy, he is nevertheless bound to use due diligence to prevent such destruction or loss. If his negligence or want of proper attention contrib-

uted thereto he would be liable therefor. It was not necessary, in this case, that there should have been fraud or collusion with the Indians, or wilful negligence on the part of the defendant, or his agents, to render him liable. Supposing the express agent to have been a suitable person for the duty he had to perform, all that the charge exacted of him was, such care and attention as he naturally would have taken of his own goods, that is, ordinary care and attention.

Surely, the law requires this degree of diligence, and would make the defendant liable for the want of it, that is, for ordinary negligence. Whether such negligence was or was not proved, was fairly left to the jury?

The only point, it seems to us, on which any doubt could arise as to the entire accuracy of the charge, is, as to the degree of care and attention required of the defendant himself in the selection of the agent. The court held that it was his duty to provide for this hazardous business a cool, self-possessed, prudent man, of good judgment and forethought. Now, surely, no one would think of employing a man wanting in any one of these qualifications to carry his own goods across the Plains at that time. Ordinary prudence would dictate that such a man was essential for that hazardous service. Here, again, the charge really requires of the defendant to do nothing more than, as a prudent man, he would do in the transaction of his own business; in other words, it only exacts ordinary diligence and attention at his hands. Ordinary diligence, like most other human qualifications or characteristics, is a relative term, to be judged of by the nature of the subject to which it is directed. It would not be any want of ordinary care or diligence to intrust the shoeing of a horse to a common blacksmith, but it would be gross negligence to intrust to such a person the cleaning or repair of a watch. A man who would be perfectly competent to perform the duties of an express messenger now, on the Union Pacific Railroad, with a commodious express car at his service, might have been a very unfit and incompetent agent in 1865, when nothing but a mail-coach traversed the prairie, and roving bands of hostile Indians infested the route.

Now, whether the agent in charge of the line, on this occasion, was such a man as should have been employed could only be judged of by what he did, or what he neglected to do; and it was fairly left to the jury to say whether his conduct was such as a proper and competent man would have pursued; or whether it was wanting in that respect; and the court took the pains to warn the jury that the result is not always a true criterion whether a man pursued a prudent course or not. They must judge fairly in reference to all the circumstances.

We do not mean to be understood as laying down any different rule from that which was laid down by this court in the late case of *Railroad Company* v. *Reeves*,* namely, that ordinary diligence is all that is required of the carrier to avoid or remedy the effects of an overpowering cause. We think that when this case, with all its circumstances, is fairly considered, this was all that the judge who tried the cause exacted of the defendant, and that the question of negligence was fairly left to the jury.

JUDGMENT AFFIRMED.