## ANDERSON v. NEW YORK & T. S. S. Co.

*(Circuit Court, S. D. New York. July 30, 1891.)*

**1. MASTER AND SERVANT—INCOMPETENT FELLOW-SERVANT—EVIDENCE.**
In an action for personal injuries caused by the negligent handling of a winch it appeared that while the vessel was discharging its cargo a man from the shore was put at the winch. Signals were given by a whistle, and plaintiff testified that the winchman told him he was deaf, and that he must blow loud; that the winchman did not follow signals correctly; and that the draft which struck plaintiff was carried on after the signal to stop, and lowered too fast while he was reaching for it. *Held* sufficient to sustain a verdict that the winchman was incompetent, notwithstanding that he testified that he was not deaf, and others testified that he was skillful and attentive.

**2. EVIDENCE—RES GESTÆ.**
The declaration of the winchman that he was deaf, made in connection with a request to the plaintiff in the course of their employment, was a part of the *res gestæ*, and evidence of deafness.

At Law. Action for damages for personal injuries. On motion for new trial.

*George L. Carlisle*, for plaintiff.

*Butler, Stillman & Hubbard*, for defendant.

WHEELER, J. The plaintiff shipped at New York as an able seaman on the defendant's steam-ship San Marcus. At Key West a man from the shore was put at the winch on the lower deck, and the plaintiff, with a whistle for signaling to the winchman on the upper deck, discharging cargo. A draft was lowered suddenly by the winchman when signaled to stop, which struck the plaintiff, and sent him down the hatch, severely injuring him. The principal question on the trial of this action for this injury was whether the winchman was fit for that place, and on this motion of the defendant for a new trial is whether the evidence of unfitness was sufficient for the verdict. The plaintiff testified in substance that the winchman said he was deaf, and that the plaintiff must blow loud; that the winchman did not hear the signals, and follow them correctly, and some barrels being unloaded were broken; and that the draft which struck him was carried too high, past a signal to stop, and lowered too fast, while he was reaching for it. The winchman controlled powerful machinery, moving heavy loads handled by the plaintiff and others out of his sight, on signals given to him by the sound of the whistle only; and good hearing and attention, as well as understanding of the machinery and of his duties, were essential qualifications which those employing him ought to see that he possessed,

especially when taking him from the shore outside the ship. *Holladay* **v.** *Kennard*, 12 Wall. 254.

The declaration of the winchman that he was deaf, made in connection with a request to the plaintiff to blow loud and in the course of their employment, was a part of the *res gestæ*, and evidence that he was in fact deaf and unable to hear the signals as usually given. *Eddy* v. *Davis*, 34 Vt. 209. And the fact that the draft was lowered too fast suddenly, after being taken too high, contrary to the signals, was evidence of want of hearing or of skill. *Stokes* v. *Saltonstall*, 13 Pet. 181. These considerations, in connection with the testimony of the plaintiff that the winchman apparently did not hear, seem to at least have entitled the plaintiff to go to the jury, and to have called for evidence on the part of the defendant. The testimony of many witnesses, including the winchman himself, was produced in behalf of the defendant, which tended to show that he was not deaf, nor deficient in skill or attention. When the evidence was all in, the weight and balancing of it were for the jury; and their conclusion upon it in respect to its preponderance, when fairly reached, is not re-examinable. Amend. Const. U. S. art. 7. When a case is such that it must be submitted to the jury, conclusiveness of the verdict must follow. *Insurance Co.* v. *Doster*, 106 U. S. 30, 1 Sup. Ct. Rep. 18. Motion for new trial denied.