### In re OLD DOMINION S. S. CO.

(District Court, E. D. North Carolina. May 7, 1902.)

1. SHIPPING—PROCEEDING FOR LIMITATION OF LIABILITY—LOSS OF CARGO BY FIRE.

In a proceeding by a shipowner in a district court for limitation of liability, the question whether a fire by which cargo was destroyed was caused by the design or neglect of such shipowner, so as to deprive it of the exemption from liability given by Rev. St. § 4282, if not previously adjudicated, will be determined by the court, and will not be left open to be determined by a jury in an action brought by the cargo owner for the purpose.[1]

---

[1] Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.

**2. SAME.**

Under Rev. St. § 4282, which provides that no owner of any vessel shall be liable for loss or damage caused to goods shipped by reason of fire on board the vessel "unless such fire is caused by the design or neglect of such owner," the fact of such design or neglect must be affirmatively shown by a cargo owner to charge the shipowner with liability for a loss by fire.

**8. SAME—FINDING BY STATE COURT—CONSTRUCTION AND EFFECT.**

A special finding by the jury, in an action in a state court by a cargo owner to charge a steamship company with liability for loss of goods by fire, that the goods were destroyed through the negligence of the defendant, will be given effect as conclusively establishing defendant's negligence and liability in proceedings subsequently instituted by it for limitation of liability in a court of admiralty; but where under the laws of the state a corporation is chargeable with the negligence of its servants, so that the finding may have been based on the acts or omissions of the master or crew, it does not establish the fact that the loss occurred with "the privity or knowledge of the owner," so as to deprive the company of the benefit of Rev. St. § 4283, giving it a right to limitation of liability for any loss occurring without its privity or knowledge, which must be that of its managing officers.

In Admiralty. Proceeding for limitation of liability.

Wm. H. White and Donnell Gilliam, for petitioner.

Thos. J. Jarvis and Jas. H. Pou, for respondents.

PURNELL, District Judge. On September 21, 1899, the old Dominion Steamship Company filed in the district court a petition and libel to limit its liability under the act of 1851 and acts amendatory thereof (section 4282 et seq., Rev. St.). Stipulations were filed, a trustee was appointed to whom the lighter or flat was transferred, appraisers appointed, and other proceedings had in accordance with the statute and practice. The freight paid in advance has been refunded, and the unpaid freight has not been collected. All proceedings are regular; whereupon a monition and injunction issued as provided in admiralty rule 54. Answers were duly filed by the Thames & Mersey Marine Insurance Company, Limited, and the British Foreign & Marine Insurance Company, Limited. Subsequently the following agreed statement of facts was filed:

"First. That the petitioner, the Old Dominion Steamship Company, is a corporation chartered and existing under the laws of the state of Delaware, and is thereby authorized to engage in interstate and intrastate commerce; that at the time hereinafter mentioned the petitioner was engaged in operating lines of steamships, as common carriers of freight and passengers, from Tarboro to Washington, N. C., and points on Tar river, in said state, and that the steamer R. L. Myers was performing this service from Washington to Tarboro, and from Washington another steamer performed the service to Belle Port or Belle Haven, in said state; that at Belle Port or Belle Haven said steamers connected with the Norfolk & Southern Railroad, and their freight and passengers transported thereby to the city of Norfolk, in the state of Virginia, and from Norfolk the said petitioner operated lines of steamboats to New York, Boston, and other Eastern cities; that formerly the said petitioner operated a line of steamers from the said town of Washington to the city of Norfolk, but this line had been abandoned, and the arrangement above mentioned substituted therefor, at the time of the loss in question.

"Second. That Tar river is a navigable stream from Washington to Tarboro; that at Washington it takes the name of Pamlico river, which empties into Pamlico sound, which latter body of water is connected with the Atlantic

Ocean by Ocracoke and Hatteras Inlets. The tides ebb and flow in Pamlico sound and river, but do not ebb and flow in Tar river above Greenville.

"Third. That the steamer R. L. Myers of the petitioner plies regularly between Washington and Greenville, a distance of twenty-five miles, at all seasons of the year, but for several months of each year during the late summer and part of the fall the water of the river is too low to enable said steamer Myers to operate above Greenville; that when this is the case the company uses a lighter draft steamer above Greenville, and when the water is too low for this lighter draft steamer, which it is for several months of each year, the company uses a flat or lighter hereinafter described with which to take the cargo from steamer at Greenville to points above and from points above Greenville to the steamer at Greenville; that during the entire period that the petitioner has been operating its steamer on said river it has been customary for the petitioner to use the flat or lighter in use at the time of the loss in question for the purpose of transporting freight from points on the river above Greenville to the steamer Myers at Greenville whenever and during the time the water of the river would not admit of navigation by said steamer; that the use of said flats for such purpose was well known to the shippers of the cotton in question, and also that said cotton was so to be transferred in this particular instance, but such was not known to the consignees of said cotton or to the insurance companies.

"Fourth. That the flatboat or lighter in use at the time of the loss complained of was about 80 feet long, 18 feet wide, 4 feet deep, with a flat deck on which the cargo was loaded; that at one end there was a part set off for a cabin for the crew, and the covering of this cabin was somewhat higher than the flat deck of the other part; that both ends of the flat were square, and it was propelled by men by means of poles, and was guided by means of a large oar which could be adjusted at either end of the flat; that this flat had no special name, but was known and called the 'Old Dominion Flat,' and was not registered.

"Fifth. That the cotton in question was loaded upon said flat at Falkland and Center Bluff, two points on said river above Greenville, on the 10th of November, 1897, and was destroyed by fire the same day, while being transported to Greenville for delivery to the steamer Myers.

"Sixth. That the Thames & Mersey Insurance Company is a corporation duly licensed and empowered to do a general insurance business, and that 29 bales of the cotton upon the flat was insured in said company, and that the said cotton was entirely destroyed, and was of the value set forth in the answer of said company herein; that the British Foreign & Marine Insurance Company is a corporation duly licensed and empowered to do a general marine insurance business, and that the 113 bales of cotton upon said flat was insured by and in said company; that said cotton was entirely destroyed by said fire, and was of the value set forth in the answer of said company herein.

"Seventh. That the testimony taken on the trial of the suit of the Thames & Mersey Insurance Company against the Old Dominion Steamship Company, tried at April term, 1899, of Pitt superior court, as set out in the printed copy now on file in the supreme court, together with this statement of facts, shall be taken as the evidence upon which the two causes pending in this court shall be heard. Either party shall have the right to file herewith a printed copy of the above-mentioned evidence as now on file in the supreme court of the state."

The value of the cotton referred to in section 6 of the facts agreed, set out in the answer of the Thames & Mersey Insurance Company, is $706.59, and in the answer of the British Foreign & Marine Insurance Company $2,022.45, the insurance on which the said companies have severally paid, and been substituted by assignment to the rights of the shipper and owners thereof.

The testimony referred to in the seventh section of the agreed facts shows the defendant in the state court, libelant here, introduced all

the testimony as to the origin of the fire, and this does not account therefor; there is no evidence tending to show design or neglect, privity, or knowledge of the owners of the vessel. The facts as gathered from the record do not show how the fire originated. When the lighter had proceeded about three miles on the voyage down the river an explosion, or a noise resembling an explosion, was heard as coming from under the cotton four or five bales forward of the cabin. Immediately the cotton was in flames. There was no fire on or about the lighter. The lighter was not equipped with any fire apparatus. There was nothing of the kind aboard, except two buckets from which the crew drank water. No equipment would have been effective in extinguishing the fire after it was discovered. Much of the cotton was thrown overboard, but this continued to burn. Efforts to extinguish the fire failed when the lighter was scuttled and sunk. The lighter was manned by a crew of seven in the employment of libelant, which crew was sufficient and competent for the service in which they were engaged.

At the time the libel was filed the Thames & Mersey Company had obtained judgment against the libelant in the state superior court of Pitt county, N. C., for $706.59 and costs, in which suit, among other issues, the jury (under the instructions of the court) answered the issue "Was said cotton destroyed by the negligence of the defendant company," "Yes," and judgment was rendered accordingly for the amount claimed. From this judgment libelant has perfected an appeal to the state supreme court. The insurance company now pleads "said findings, and the judgment thereon against the libelant, further saying said fire did not occur through the fault or negligence of its officers, agents, or employés."

At the time the libel herein was filed and the injunction issued the British Foreign & Marine Insurance Company had instituted suit in the state superior court of Pitt county, N. C., against the libelant by issuing a summons for the relief demanded in the complaint, but no complaint had been filed or other proceeding had.

The bill of lading issued by the libelant to the shipper of the cotton destroyed or lost, as hereinbefore stated, does not specify any particular vessel or route by which the same is to be transported, but contains the following conditions: "(1) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof by causes beyond its control, or by floods, or by fire," etc. "(2) No carrier is bound to carry said property by any particular train or vessel," etc.

The maritime law of the United States limiting the liability of shipowners is contained in sections 4282–4289 of the Revised Statutes of the United States and acts amendatory thereof. The policy and purposes of these statutes are discussed and explained in the decisions of the supreme court in able and exhaustive opinions filed in Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 588–9, 3 Sup. Ct. 379, 27 L. Ed. 1038; Transportation Co. v. Wright, 13 Wall. 104, 121, 20 L. Ed. 585; Constable v. Steamship Co. (1894) 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903; and many other decisions un-

necessary to quote. The policy of the law is too well settled to require further comment, and settled by the highest authority.

The two claims represented in the case at bar may be easily distinguished, and are governed by different provisions of the law. Section 4282, Rev. St., is as follows: "No owner of any vessel shall be liable to answer for or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." This section clearly applies to and governs the claim of the British Foreign & Marine Insurance Company.

The argument that this suit should be left open until the same can be tried in the circuit court and the question of negligence passed on by a jury is without force. The jurisdiction of this court in such causes is ample and complete,—it is absolute. The authorities cited in respondent's brief to sustain the position taken, "that since the passage of the amendatory acts—the Harter act and others—the disposition of the courts has been reversed, and instead of extending by implication it has been their policy to define those acts strictly, and interpret them in favor of the owners of the goods rather than in favor of the owner of the ship," do not seem to sustain this contention. In The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed 130 (cited as Flint v. Christall), the question was whether the owner of a stranded vessel, seaworthy at the time of the commencement of the voyage, was entitled to general average contribution for sacrifices made and suffered by him subsequent to the stranding in efforts to save freight and cargo, and has no application to the case arising under the section above quoted. The case of Calderon v. Steamship Co., 170 U. S. 272, 8 Sup. Ct. 588, 42 L. Ed. 1033, was based on the finding that the "negligence of the company was clearly proven," and the bill of lading attempted to limit the liability of the carrier to packages of goods not exceeding in value $100, and such bill of lading was prohibited by the Harter act, and had been held to be invalid in numerous decisions. In The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181, the unseaworthiness of the vessel was found to exist, and the claim to exemption from liability was from "faults or errors in navigation or in the management of the vessel." The other decisions cited in the brief are all by courts inferior to the supreme court, and cannot govern the application of principles laid down by that court. They do not attempt to do so, and are as far from application in this case as those above cited. This is a case of fire, and the bill of lading, a quotation from which is hereinbefore cited, simply claims exemptions allowed under the statute.

The claim of the Thames & Mersey Marine Insurance Company, Limited, is governed by a different section of the statute and a different principle of marine law. Had libelant filed its petition before taking its chances in the state court, the two claims would have been governed by the same law; but it did not see proper to do this, but submitted its cause to that jurisdiction. It must abide the conse-

quences, and the judgment in the state court must be treated in this court with due deference, governed by the comity between courts.

The rule of negligence is essentially different in the two jurisdictions. The rule in the state court it is unnecessary to discuss. It follows the acts of the legislature and the decisions of the state supreme court, neither of which governs in a court of admiralty, especially when they, either or both, conflict with the provisions of an act of congress or decisions of the courts of the United States. In this court those rules control which are in accordance with the maritime law which libelant has invoked. It has the privilege of invoking the marine law at any time before a judgment is actually paid (The Benefactor, 103 U. S. 239, 26 L. Ed. 351; Ben. Adm. § 658; Hughes, Adm. pp. 228, 229); but if it neglects to do so this court will determine the cause as it finds it when its jurisdiction is invoked.

The claim of the Thames & Mersey Marine Insurance Company must therefore be taken to be established by judgment. Hence this claim would be governed by section 4283, Rev. St., as amended, which is as follows:

"The liability of the owner of any vessel for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture, done, occasioned or incurred, without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending."

This section of the Revised Statutes was amended by the act of June, 1886, and made applicable to canalboats, barges, and lighters, and such amendment is constitutional. Ex parte Garnett, 141 U. S. 1, 11 Sup. Ct. 840, 35 L. Ed. 631. In the state court—and it is presumed the judge instructed the jury according to the state law—a corporation is liable for the negligence of its servants, but under the act of congress the privity or knowledge necessary to deprive it of the limitation therein provided for must be that of its managing officers. Craig v. Insurance Co., 141 U. S. 638, 646, 12 Sup. Ct. 97, 35 L. Ed. 886; The Republic, 9 C. C. A. 386, 61 Fed. 109. The owner is not deprived of the benefit of the statute by reason of the privity or knowledge of the master. Quinlan v. Pew, 5 C. C. A. 438, 56 Fed. 111. An examination of the record filed as evidence in this cause by consent does not disclose any finding that the loss, damage, etc., was "incurred with the privity or knowledge of such owner or owners." To deprive petitioner, who has complied with the requirements of the statute, of the limitation of liability therein provided, there must be an affirmative finding to this effect. It is therefore held that as to the claim of the British Foreign & Marine Insurance Company the petitioning libelant is exempt from liability under section 4282 of the Revised Statutes; that as to the claim of the Thames & Mersey Marine Insurance Company the liability of petitioning libelant is limited to the value of the lighter or flat on which the cargo of cotton was loaded when the fire occurred.

A decree will be entered accordingly.