ROBERT SHORE, ADMINISTRATOR (ESTATE OF SHERRY SHORE), ET AL. *v.* TOWN OF STONINGTON ET AL.

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued February 5—decision released May 18, 1982

*James A. Wade,* with whom, on the brief, was *Charles L. Howard,* for the appellants (plaintiffs).

*Thomas B. Wilson,* with whom were *John A. Collins* and, on the brief, *Dale P. Faulkner,* for the appellee (named defendant).

PARSKEY, J.  The issue presented in this appeal is whether the plaintiff, whose decedent was killed by a drunk driver who had been stopped but not arrested by a town police officer, has a cause of action in negligence against the officer and the town[1] for failure to enforce §§ 14-222 and 14-227a of the

---

[1] The plaintiff brought the action against the town pursuant to General Statutes § 7-465 which provides in pertinent part: "Sec. 7-465. ASSUMPTION OF LIABILITY FOR DAMAGE CAUSED BY EMPLOYEES. JOINT LIABILITY OF TOWNS IN DISTRICT DEPARTMENT OF HEALTH. (a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

This statute provides that the town is liable only if its agent, here the police officer, is personally liable to the plaintiff. *Sestito* v. *Groton,* 178 Conn. 520, 527, 423 A.2d 165 (1979).

Connecticut General Statutes.[2] The trial court granted the defendant town's motion for summary

[2] "[General Statutes] Sec. 14-222. RECKLESS DRIVING. (a) No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or in any parking area for ten cars or more or upon any private road on which a speed limit has been established in accordance with the provisions of section 14-218a or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle, or the operation, downgrade, upon any highway, of any commercial motor vehicle with the clutch or gears disengaged, or the operation knowingly of a motor vehicle with defective mechanism, shall constitute a violation of the provisions of this section.

(b) Any person who violates any provision of this section shall be fined not more than one hundred dollars or imprisoned not more than thirty days or be both fined and imprisoned for the first offense and for each subsequent offense shall be fined not more than two hundred dollars or imprisoned not more than one year or be both fined and imprisoned."

"[General Statutes] Sec. 14-227a. OPERATION WHILE UNDER INFLUENCE OF LIQUOR, DRUG OR BOTH. CHEMICAL TESTS. EVIDENCE. (a) No person shall operate a motor vehicle upon a public highway of this state or upon any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or upon any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area, as defined in section 14-219a, for ten or more cars or upon any school property while under the influence of intoxicating liquor or any drug, or both.

(e) Any person who violates the provisions of this section shall be fined not less than three hundred dollars nor more than one thousand dollars or imprisoned not more than six months or be both fined and imprisoned for the first offense, and shall be imprisoned not less than sixty days nor more than one year for the second offense, and for any subsequent offense, shall be imprisoned not less than six months nor more than one year; provided two days of the sentence imposed for a second or subsequent offense may not be suspended or reduced in any manner, and provided further such two-day minimum mandatory sentence may be served on a weekend."

judgment, finding that the police officer owed no specific duty to the plaintiff's decedent to enforce the motor vehicle laws of the state.[3] We affirm.

From the pleadings and the materials submitted in support of the motion for summary judgment the court set forth in its memorandum of decision the following facts which are unchallenged in this appeal: On January 14, 1980 at approximately 10:40 p.m., Lieutenant Edward Sylvia, a police officer of the town of Stonington, was engaged in the performance of his duties as a shift supervisor. As Sylvia proceeded east on Route One in Stonington, he observed a green Pontiac automobile on the same highway heading in a westerly direction at a fast rate of speed. Sylvia turned his cruiser around and proceeded to follow the Pontiac. He observed the vehicle cross the center line of the highway a few times and then pull into the parking lot of the defendant Veterans of Foreign Wars, Harley P. Chase Post 1265 (hereinafter V.F.W.).

Sylvia followed the vehicle into the lot, got out of his cruiser, and approached the driver, later identified as Mark Cugini. When the officer asked Cugini where he was going in such a hurry, Cugini replied that he was there to pick up his girlfriend at the V.F.W. Sylvia informed him that if he wanted to keep his driver's license, he had better slow down and should let his girlfriend drive. The officer departed for other duties. Cugini entered the V.F.W. The evidence concerning his condition of sobriety as he entered the V.F.W., considered in the

[3] Summary judgment entered against the plaintiff as to counts one and two. Counts three and four, brought against the defendant liquor serving establishment pursuant to General Statutes § 30-102, are not relevant to the present appeal.

light most favorable to the plaintiff, could reasonably lead to a conclusion that he was under the influence of intoxicating liquor or drugs. Cugini did not drink at the V.F.W. After a short conversation with one of its patrons, he left and drove away in the green Pontiac.

Subsequently that evening at about 11:30 p.m., Cugini, driving along Route 78 in Westerly, Rhode Island at a high rate of speed, struck a vehicle being operated by the plaintiff's decedent, Sherry Shore. Mrs. Shore died from the injuries suffered as a result of the collision.

"Negligence is a breach of duty." *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 304, 93 A.2d 292 (1952). It is important to distinguish between the existence of a duty and the violation of that duty. The plaintiff argues that summary judgment is inappropriate in this area because there existed a genuine dispute as to the material facts relating to the extent of Sylvia's duty to the plaintiff's decedent. The law does not recognize a "duty in the air." See Pollock, Torts (13th Ed.) 468; Winfield, "Duty in Tortious Negligence," 34 Colum. L. Rev. 41, 42 n.8 (1934). To sustain a cause of action, the court must determine whether the defendant owed a duty to the plaintiff's decedent; *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982); and the applicable standard of care. *Fidelity & Casualty Co.* v. *Constitution National Bank*, 167 Conn. 478, 482, 356 A.2d 117 (1975). The existence of a duty is a question of law. *Nolan* v. *The New York, New Haven & Hartford Railroad Co.*, 53 Conn. 461, 471, 4 A. 106 (1885); Winfield, supra, 43. Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty

in the particular situation at hand. See Green, "The Duty Problem in Negligence Cases," 28 Colum. L. Rev. 1014, 1029–30 (1928).

We cannot agree with the plaintiff that the trier of fact must resolve the parties' dispute over the existence of the duty to the plaintiff's decedent. We turn to the question of whether the trial court correctly concluded that Sylvia's duty was public in nature and he owed no specific duty to Mrs. Shore to arrest Cugini for violation of §§ 14-222 and 14-227a of the General Statutes.

The rule of official responsibility applicable to this case is the following: "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed, if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages." *Leger* v. *Kelley,* 142 Conn. 585, 589–90, 116 A.2d 429 (1955); see also *South* v. *Maryland,* 59 U.S. (18 How.) 396, 402–403, 15 L. Ed. 433 (1855); *Massengill* v. *Yuma County,* 104 Ariz. 518, 521, 456 P.2d 376 (1969); 2 Cooley, Torts (4th Ed.) § 300; 63 Am. Jur. 2d, Public Officers and Employees § 287; 65 C.J.S., Negligence § 4 (8); annot., 41 A.L.R. 3d 700.

The distinction between public and private duty is an expression of the many policy considerations which lead the law to determine whether interests of a particular type are entitled to protection against conduct by officials. See *Reenders* v. *Ontario,* 68 Cal. App. 3d 1045, 137 Cal. Rptr. 736

(1977); Prosser, Torts (4th Ed.) § 53; Green, supra, 1034. Policy considerations have also resulted in the establishment of certain exceptions which provide that an individual cause of action may be brought against an official for breach of duty without regard to whether the duty is technically a public or private one. If by statute or other rule of law the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. For example, an official may be sued in a civil action for refusing to recognize a validly cast vote; *South* v. *Maryland,* supra, 403; or for releasing from quarantine a dangerous dog before the expiration of the time period required of the official. *Wright* v. *Brown,* 167 Conn. 464, 471–72, 356 A.2d 176 (1975); see 63 Am. Jur. 2d, supra, § 292. There is also authority for the proposition that where the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal. *Rubinow* v. *San Bernadino,* 169 Cal. App. 2d 67, 336 P.2d 968 (1959). We have recognized the existence of such duty in situations where it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm. See *Sestito* v. *Groton,* 178 Conn. 520, 528, 423 A.2d 165 (1979). *Sestito* involved a policeman who waited and watched a public disturbance without interfering until the plaintiff's decedent was shot. Resolving conflicting testimony on the issue of imminence of harm in favor of the plaintiff, we held that the case should then have been submitted to the jury. In the present case, however, resolving the issue of Cugini's

sobriety in favor of the plaintiff does not overcome the threshold requirement for submission of the case to the jury, namely, that during his encounter with Cugini, Sylvia could have been aware that Cugini's conduct threatened an identifiable victim with imminent harm. The plaintiff's cause of action fails, therefore, for want of a ministerial or a clear and unequivocal discretionary duty.

Additionally, a statute may specifically provide for a cause of action against an official or a municipality for failure to enforce certain laws, such as those designed to prevent disturbances of the peace by riotous assemblies. See, e.g., *Sestito* v. *Groton*, supra, 523–24 (General Statutes § 7-108).[4] In this case, however, there is no analogous statute providing an action against Sylvia under these circumstances. Sylvia had authorization to enforce General Statutes §§ 14-222 and 14-227a which gave him the discretion to warn Cugini or to remove him from the road as the situation appeared to require. Such authorization is not the equivalent of General Statutes § 7-108 which specifically enjoins police

[4] "[General Statutes] Sec. 7-108. CITY OR BOROUGH LIABLE FOR DAMAGE DONE BY MOBS. Each city and borough shall be liable for all injuries to person or property, including injuries causing death, when such injuries are caused by an act of violence of any person or persons while a member of, or acting in concert with, any mob, riotous assembly or assembly of persons engaged in disturbing the public peace, if such city or borough, or the police or other proper authorities thereof, have not exercised reasonable care or diligence in the prevention or suppression of such mob, riotous assembly or assembly engaged in disturbing the public peace. Each city and borough shall be liable to the state for any sums paid for compensation or expenses of any sheriff, his deputy or other persons called upon to assist him, while engaged in preventing or suppressing any mob or riotous assembly, preserving the public peace or affording protection to any person or property endangered by any mob or riotous assembly or any assembly of persons engaged in disturbing the public peace, within such city or borough. . . ."

officers to suppress riotous assemblies and holds the city or borough liable for all injuries suffered for failure of the officers to exercise reasonable care. A third exception to the general rule has been recognized where the complaint alleges an action involving malice, wantonness, or intent to injure, rather than negligence. *Stiebitz* v. *Mahoney*, 144 Conn. 443, 448–49, 134 A.2d 71 (1957); *Medeiros* v. *Kondo*, 55 Hawaii 499, 503, 522 P.2d 1269 (1974); *Neiswender* v. *Edinger*, 59 Ohio App. 2d 25, 28, 392 N.E.2d 580 (1978); *Thomas* v. *Osborn*, 38 Pa. D. & C. 2d 431, 433 (1965); 63 Am. Jur. 2d, supra, § 290. This exception cannot be applied in our case since the plaintiff's complaint alleges negligence only. An individual may sue in negligence if injured by an agent of an official body which has assumed the functions of a public corporation. *Veach* v. *Phoenix*, 102 Ariz. 195, 197, 427 P.2d 335 (1967). Also, if officials request aid from the public to apprehend criminals, a reciprocal duty arises to protect each person who aids them from foreseeable harm resulting from such assistance. *Schuster* v. *New York*, 5 N.Y.2d 75, 80–81, 154 N.E.2d 534 (1958). This is not a case, however, where the town acted as a public corporation, nor an instance of reciprocal duty to aid.

In *Stiebitz* v. *Mahoney*, supra, 447, we recognized the existence of an action against a police chief for negligently hiring an unfit police officer, an action independent of the respondeat superior theory of liability. This common-law tort is not limited to instances of liability of public officials but extends to any situation where a third party is injured by an employer's own negligence in failing to select an employee fit or competent to perform the services of employment. See *Holladay* v. *Kennard*, 79 U.S.

(12 Wall.) 254, 258, 20 L. Ed. 390 (1870); *Evans v. Morsell,* 284 Md. 160, 164–67, 395 A.2d 480 (1978); *Vanderhule v. Berinstein,* 285 App. Div. 290, 294, 136 N.Y.S.2d 95 (1954); Prosser, Torts (4th Ed.) p. 175 and n.73; 57 C.J.S., Master & Servant § 559. The plaintiff has not advanced this theory of liability in the present case.

Courts in other jurisdictions have faced questions similar to the one presented here. Courts noting applicable exceptions to the general rule of official immunity nevertheless approve the general rule in circumstances like those presented in this case. See *State v. Superior Court of Maricopa County,* 123 Ariz. 324, 333, 599 P.2d 777 (1979). The special duty required to maintain the action cannot be established by the mere fact that someone with whom the official had prior contact subsequently injured the plaintiff or the plaintiff's decedent. See *Duran v. Tucson,* 20 Ariz. App. 22, 509 P.2d 1059 (1973); *Evett v. Inverness,* 224 So. 2d 365 (Fla. App. 1969). In deciding the issue of when, if ever, an official's public duty precipitates into a special one to prevent harm to an individual, the law requires, to maintain the action, a showing of imminent harm to an identifiable victim. See, e.g., *Ivicevic v. Glendale,* 26 Ariz. App. 460, 549 P.2d 240 (1976); *Crouch v. Hall,* 406 N.E.2d 303 (Ind. App. 1980); *Isereau v. Stone,* 207 Misc. 938, 140 N.Y.S.2d 582 (1955). Although one jurisdiction has abandoned the public/private duty analysis and adopted in its place 2 Restatement (Second), Torts § 324 A;[5] see *Coffey*

---

[5] "[Restatement (Second), Torts] § 324 A. LIABILITY TO THIRD PERSON FOR NEGLIGENT PERFORMANCE OF UNDERTAKING. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of

v. *Milwaukee,* 74 Wis. 2d 526, 540, 247 N.W.2d 132 (1976) ; we do not think that section apposite in the context of official responsibility because the official is already under a duty to the public. See also *Adams* v. *State,* 555 P.2d 235, 246–47 (Alaska 1976) (Connor, J. dissenting) (official responsibility to enforce the law is not an undertaking "to render services to another" as contemplated by § 324 A). The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Should the officer try to avoid liability by removing from the road all persons who pose any potential hazard, he may find himself liable in many instances for false arrest. We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all.

There is no error.

In this opinion HEALEY, ARMENTANO and SHEA, Js., concurred.

PETERS, J. (dissenting). I disagree with the majority opinion because I think this case is controlled by our recent decision in *Sestito* v. *Groton,* 178 Conn. 520, 423 A.2d 165 (1979). Before *Sestito,*

a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

our case law had accepted the limited rule of official responsibility which the majority opinion accurately reports. In *Sestito,* however, this court unanimously decided to follow a different course when, in considering the liability of a police officer, we held (p. 528) that "[t]he question in each case is whether the facts present a situation where the statute [General Statutes § 7-108] applies, that is, whether a public official's constant general duty to the public has, in addition, subsumed a special duty to the individual claiming injury . . . . It is this factual inquiry that should be left for jury determination, whether the alleged duty to the individual arises from other statutes, regulations, or the common law." Although *Sestito* was apparently not called to the attention of the trial court, that oversight cannot impair *Sestito's* role as a binding precedent.[1] I do not see how the holding of *Sestito* can be reconciled with the affirmance of summary judgment for the defendants in this case.

The facts of *Sestito* v. *Groton* are important to an assessment of its relationship to this case. There a supernumerary police officer driving a town police car was on patrol when he observed a group of at least nine men drinking, arguing, and scuffling in a parking lot outside a bar. Despite the visible melee, and the officer's belief that one of the men might be armed, the officer did not intervene until he heard gunshots. He then drove over and arrested the assailant. Suit was brought by the administratrix of the man who was shot and died of the gunshot wounds that same day. *Sestito* v. *Groton,* supra, 522–23.

---

[1] This case was decided by the trial court after *Sestito's* publication.

We held in *Sestito* that these facts sufficed to permit the plaintiff's case to be submitted to a jury. That holding seems to me inconsistent with the position taken in the majority opinion that a police officer's private special duty cannot be established "by the mere fact that someone with whom the official had prior contact subsequently injured the plaintiff or the plaintiff's decedent." *Sestito* found that liability could be established, under sufficiently provocative circumstances, without *any* prior contact. The facts of the case before us, furthermore, illustrate more than "mere . . . prior contact" since it is alleged that the driver was visibly under the influence of drugs or alcohol. Once an experienced police officer has the opportunity to observe a potentially volatile situation, *Sestito* teaches that he can ignore that situation only at his peril.

Nor am I persuaded that *Sestito* is limited to injury caused to an identifiable person. In *Sestito* itself, this court noted that the melee began with "at least" seven men, who were subsequently joined by two others. *Sestito* v. *Groton,* supra, 522–23. There was no way to foresee who the eventual victim would be. Suppose, in *Sestito,* that the injured person had been not a member of the original melee but an innocent bystander, a hapless patron of the bar who emerged on the scene at the wrong moment. I believe that *Sestito* would have permitted a jury to find that the scope of the risk occasioned by uninterrupted continuation of the melee included an injury to a bystander, even though his identity would initially have been indeterminate. In other cases, this court has recognized that an action for negligence does not ineluctably depend upon the ability to foresee the identity of

future complainants. *Wright* v. *Brown,* 167 Conn.
464, 468–69, 356 A.2d 176 (1975); *Stiebitz* v.
*Mahoney,* 144 Conn. 443, 447, 134 A.2d 71 (1957).
I suggest that melees, and drunken drivers, are
notoriously undiscriminating in their choice of
victims. Under *Sestito,* a police officer is liable
whenever the circumstances indicate that there is
an imminent risk that *someone* will be seriously
injured.

A holding that the plaintiff in this case has a
right to have the case decided by a jury as a ques-
tion of fact, rather than by a judge as a matter of
law, is consistent with the developing case law in
other jurisdictions. Other courts have held that
public officials no longer enjoy complete immunity
for the negligent performance of their duties.
*Flournoy* v. *McComas,* 488 P.2d 1104, 1106 (Colo.
1971) (principal negligent for death of school child
in traffic accident). Thus, a public employee may
be held liable for negligence "even though his
employer is clothed in the immunity and not liable
on the principle of *respondeat superior"; Givens* v.
*Sellars,* 273 N.C. 44, 49, 159 S.E.2d 530 (1968); or
if "he was malicious or abused his discretion";
*Neiswender* v. *Edinger,* 59 Ohio App. 2d 25, 28, 392
N.E.2d 580 (1978); or, in the case of an agency, if
an agent was negligent in transacting agency busi-
ness. *Weber* v. *Towner County,* 565 F.2d 1001, 1009
(2d Cir. 1977) (decided under North Dakota law).
Where a court relied on the distinction between
discretionary and ministerial acts in determining
the liability of a police officer, the hot pursuit of a
suspect was held to be a ministerial act carrying
liability for negligence and permitting a common
law action. *Seymour National Bank* v. *State,* 384
N.E.2d 1177, 1184–85 (Ind. 1979).

Faced with the doctrine that a public employee must owe a specific, private duty to his victim for liability to arise, several courts have determined that certain circumstances may create such a private duty. *In Seymour National Bank* v. *State,* supra, the court recognized "that drivers of emergency vehicles owe a duty of care to the life and property of others when driving over the maximum speed limit"; id., 1184; it based that duty on case law and statute. After stating that "[a]n obligation owing to the general public can, however, be narrowed into a specific duty to an individual," an Arizona court found that legislation authorizing the corporation commission to supervise the affairs of the state's thrift associations created a private duty to protect individual depositors. *State* v. *Superior Court of Maricopa County,* 123 Ariz. 324, 326, 599 P.2d 777 (1979). The Alaska Supreme Court found that state fire officials assumed a common law duty to victims of a hotel fire by having earlier identified fire hazards on the premises but failed to pursue their correction. *Adams* v. *State,* 555 P.2d 235, 240 (Alaska 1976). Even the decision relied on by the trial court acknowledges that "there are situations where a government, or agency thereof, can by its conduct, narrow an obligation owing to the general public into a special duty to an individual, for the breach of which it is responsive in damages." *Massengill* v. *Yuma County,* 104 Ariz. 518, 519, 456 P.2d 376 (1969).

The most sweeping approach to the problem of public and private duties is taken by the Supreme Court of Wisconsin, which characterized the distinction as "artificial" and proclaimed that "[a]ny duty owed to the public generally is a duty owed to

individual members of the public." *Coffey* v. *Milwaukee,* 74 Wis. 2d 526, 534, 247 N.W.2d 132 (1976). The court held that a complaint alleging negligence by a building inspector resulting in fire damage to an office building was "not properly demurrable on the grounds of municipal immunity from tort liability." Id., 137.

In sum, I believe that our holding in *Sestito* signalled a change, such as has occurred in our sister jurisdictions, in the law governing the liability of public officers and of the municipalities that bear the ultimate responsibility for their negligence. Nothing in the case before us tempts me to confine *Sestito* to its facts. In that case, the legislature had enjoined police officers to suppress assemblages that disturbed the public peace. General Statutes § 7-108. In this case, the legislature has authorized the police to arrest those who drive recklessly or under the influence of alcohol. General Statutes §§ 14-222 and 14-227a. If anything, the latter statutes more directly imply a public purpose to prevent private harm. We all recognize that a drunken driver is like a ticking time bomb.[2] In the presence of a ticking bomb, or an inebriated driver, a police officer should not be encouraged simply to leave the scene. I do not believe that imposition of private liability for negligent failure to take suitable precautions in such conspicuously hazardous circumstances would unreasonably

[2] The Hartford Courant reported earlier this year that alcohol was a factor in 225 deaths from automobile accidents in Connecticut in 1980. The New York Times, on April 15, 1982, reported further national statistics compiled in conjunction with President Ronald Reagan's appointment of a commission to reduce drunken driving. Each year drunken driving causes an estimated 25,000 automobile fatalities, 800,000 crashes, 750,000 serious injuries, and $5 billion in economic losses.

cramp the exercise of official discretion. On the contrary, I find it more than passing strange to require a police officer to intervene, at some possible personal peril, to safeguard a willing participant in a drunken brawl, and to immunize a police officer who has voluntarily interposed himself and who might have prevented the fatal injury of an innocent lawful user of a public highway. Having entrusted to a jury the responsibility for enforcing a police officer's discretionary duty to control a drunken brawl, we should not retreat from imposing a similar responsibility to control drunken driving.[3]

I therefore dissent.

[3] I am not prepared to assume that the death of the plaintiff's decedent was the result of an appointment in Samarra. O'Hara, Appointment in Samarra, p. 5 (1934).