[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO STRIKE #102
In a seven count complaint filed on October 7, 1994, the plaintiffs, Jeffrey and Sheila Cordtz, allege that on December 17, 1991, they obtained a mortgage from the defendant, Arbor National Mortgage, Inc. (Arbor), in connection with the purchase of residential property located in Stamford. Prior to this date, the defendant, Connecticut Appraisal, Inc., at the request of Arbor, appraised the property and valued it at $435,000.00. The plaintiffs then purchased the property for $425,000.00.
Subsequently, the plaintiffs had to relocate to Georgia. In October 1992, they sold their property to a relocation company for $357,000.00. In connection with this sale, two appraisers respectively valued the property at $355,000.00 and $360,000.00.
In the first count of the complaint, the plaintiffs allege that Arbor breached its implied duty of good faith and fair dealing because it failed to ensure that the appraisal conducted by Connecticut Appraisal was accurate. In the fourth count, the plaintiffs allege that Arbor was negligent because it failed to use reasonable care in obtaining a competent appraiser. In the fifth count, the plaintiffs assert a negligent misrepresentation claim against Arbor, based on allegations that it falsely represented to the plaintiff that the property had a fair market value of $435,000.00. In the sixth count, the plaintiffs assert a fraudulent misrepresentation claim against Arbor. In the seventh count, the plaintiffs assert a claim against Arbor pursuant to the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA). (The second and third counts CT Page 2060 allege claims against Connecticut Appraisal and are not relevant to the pending motion.)
On December 19, 1994, Arbor filed a motion to strike the first, fourth, fifth, sixth and seventh counts of the complaint (#102). On January 20, 1995, the plaintiffs filed a memorandum in opposition.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, (1992).
Arbor moves to strike the first count on the ground that the plaintiffs fail to allege that the parties entered into a contract whereby Arbor was obligated to perform an appraisal for the plaintiffs' benefit. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party . . . ."Warner v. Konover, 210 Conn. 150, 155, (1989). "The principle . . . cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 567, (1984).
In the present case, the plaintiffs fail to allege the existence of an agreement (such as a provision within the mortgage) whereby Arbor agreed to perform an appraisal for the plaintiffs' use or benefit. The principle of good faith and fair dealing cannot be used to create an implied duty on the part of Arbor to perform such services for the plaintiffs' benefit. Accordingly, the court grants Arbor's motion to strike as to the first count.
Arbor moves to strike the plaintiffs' fourth and fifth counts, which sound in negligence and negligent misrepresentation, on the ground that Arbor in its capacity as a lender does not have a duty to perform an appraisal for the plaintiffs' benefit. Arbor contends that the appraisal performed by Connecticut Appraisers was done solely for Arbor's use in evaluating the property, and was not for use by the plaintiffs or anyone else. Arbor further contends that the plaintiffs were at all times free to conduct their own appraisal for purposes of bidding on the property. CT Page 2061
"`Negligence is a breach of duty.'" Shore v. Stonington,187 Conn. 147, 151, (1982). "The law does not recognize a `duty in the air.'" Id.
 Where there is no legal duty, there can be no actual negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence . . . . [T]he duty to exercise reasonable care arises whenever the activities of two persons comes so in conjunction that the failure by one to exercise reasonable care is likely to cause injury to the other. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result. . . .
(Citations omitted; internal quotation marks omitted.) Neal v.Shiels, Inc., 166 Conn. 3, 12-13 (1974).
Ordinarily, there is no relationship between a potential lender and a loan applicant upon which to predicate a duty to perform an accurate appraisal for the benefit of the loan applicant. A potential lender conducts an appraisal for its own use in evaluating a piece of property before it makes a loan and accepts property as collateral. It is not reasonably foreseeable that a person who applies for a mortgage will rely upon an appraisal in negotiating the purchase of a parcel of property, where the appraisal was conducted solely for use by the potential mortgagee in valuing the collateral and deciding whether to enter into the mortgage transaction.
Here, it is not alleged that Arbor had an express contractual duty to perform an appraisal for the plaintiffs, nor is it alleged that Arbor, through its agents or employees, represented to the plaintiffs that it would conduct an appraisal for the plaintiffs' use or benefit. Arbor, in conducting an appraisal prior to entering into a mortgagee-mortgagor relationship with the plaintiffs, did not owe a duty to the plaintiffs to conduct an accurate appraisal, and could not have reasonably foreseen that the plaintiffs would rely on such an appraisal in negotiating the purchase price for the property. Accordingly, the fourth and fifth CT Page 2062 counts are stricken because the plaintiffs have failed to allege that Arbor owed them a duty of care.
Arbor moves to strike the sixth count, which sounds in fraudulent misrepresentation, on the ground that statements as to the value of property are statements of opinion, as opposed to statements of fact. Thus, Arbor contends that the plaintiffs have failed to allege an essential element of a claim for fraud. Arbor also argues that the plaintiffs were not fraudulently induced to forbear from conducting their own appraisal, and that it had no duty to conduct an appraisal for the plaintiffs' use.
"The elements of a fraud action are: (1) a false representation that was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment."Billington v. Billington, 220 Conn. 212, 217 (1991).
Arbor's argument that it did not have a duty to perform an appraisal for the plaintiffs' use is not relevant for purposes of ruling on the legal sufficiency of the plaintiffs' fraudulent misrepresentation claim, because the existence of a duty is not one of the elements of such a claim. The issues of whether the plaintiffs were fraudulently induced to forbear inquiry and whether the appraisal is a statement of fact or opinion cannot be resolved in the context of ruling on the present motion to strike. To rule upon these issues, the court would have to consider facts that are both outside of the four corners of the complaint and not as yet part of the record. "Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." LiljedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348 (1990). Accordingly, the court denies Arbor's motion to strike as to the sixth count.
Arbor argues that the seventh count is legally insufficient because the plaintiffs base their CUTPA claim on a single act, and therefore, failed to allege a general business practice on the part of Arbor. "Because of the introductory language of § 42-110b(a), which refers to the plural `unfair methods of competition and unfair or deceptive acts or practices,' and § 42-110g(a), which refers to the singular `method, act or practice,' there is a split of authority . . . as to whether a single act can constitute a CUTPA violation." RLG Associates Ltd. v. Gardner Peterson, 9 Conn. L. CT Page 2063 Rptr. 82, 83 (May 11, 1993, Shaughnessy, J.). Section 42-110b(d) states that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." The majority of decisions hold that in order to effectuate the intent of the statute, a single act can constitute a legally sufficient CUTPA claim. See, e.g., G.E. Capital Mortgage Services, Inc. v. SavinCorporation, 5 Conn. L. Rptr. 237, 238 (November 12, 1991, Rush, J.). But see Duncan v. Burnside Motors, Inc., 2 CSCR 379 (February 26, 1987, O'Neill, J.) (holding that an isolated act is an insufficient basis for asserting a CUTPA claim).
The court holds that a single act may support a legally sufficient CUTPA claim, as this view is consistent with the remedial nature of CUTPA. Accordingly, Arbor's motion to strike the seventh count is denied.
SAMUEL S. FREEDMAN JUDGE