[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT NO. 149
On September 6, 1994, the plaintiff, James E. Sullivan, Administrator of the Estate of James Patrick Sullivan (Estate), filed a two count complaint against the defendants, Metro-North Commuter Railroad Company (Metro-North); the City of Norwalk (City); the Redevelopment Agency of the City of Norwalk; and Ogden Allied Security Systems, Inc., arising out of the murder of James Patrick Sullivan at the South Norwalk train station on August 29, 1992.
The complaint alleges that the defendants (1) negligently patrolled and provided security at the South Norwalk train station platform on the night that James Patrick Sullivan was killed; (2) failed to promptly investigate the reports of the shooting; (3) failed to warn James Patrick Sullivan of the likelihood and/or high risk of violent crime at the train station; (4) failed to maintain the area in and around the train station in a safe and secure manner; and (5) failed to properly train and supervise those who provided security at the train station.
On September 6, 1994, the City, the moving defendant herein, filed its answer and special defenses. By way of its fourth special defense, the City alleges that it "is entitled to governmental immunity both pursuant to common law and pursuant to General Statutes § 52-557n." CT Page 11449
On May 9, 1995, the City filed a renewed motion for summary judgment based on the immunity defenses that it had specially pleaded.[1] In support of the motion, the City relies on the memorandum of law filed in connection with its September 6, 1994 motion, its reply memorandum and an affidavit of Norwalk Police Chief, Carl LaBianca, filed in conjunction with the 1994 motion for summary judgment.
Chief LaBianca's affidavit recites, in pertinent part, that:
 9. The Norwalk Police Department had no prior knowledge that such a crime was to be committed. The Department had no prior knowledge that the Plaintiff's decedent was to be the victim. The Police Department had no prior knowledge that the Plaintiff's murderer intended to kill him or would in fact kill him on this particular evening. The Department had no prior knowledge that a crime was to take place at the South Norwalk Railroad Station near the southbound platform.
 10. After the incident a criminal investigation was conducted by the Norwalk Police Department. This led to the arrest and conviction of the Plaintiff's murderer (upon information and belief after a plea bargain).
. . . .
 14. On the date of August 29, 1992, to the best of my knowledge and belief, the Norwalk Police Department had no knowledge that the Plaintiff's decedent was in imminent danger of attack, at a specific time and place, from a discreet and known source.
The gist of the affidavit is that the City had no knowledge that James Patrick Sullivan would be killed by his particular assailant at the particular location at a particular time.[2]
Based on the affidavit, the City contends that it has carried its burden of establishing that James Patrick Sullivan was not within the foreseeable class of victims exception to the governmental immunity rule.
On January 13, 1995, the Estate filed an objection to the City's motion for summary judgment arguing that James Patrick Sullivan was, in fact, within the foreseeable class of victims. CT Page 11450 On June 13, 1995, in support of its objection to the motion, the Estate filed the unsigned affidavit of James E. Sullivan. Since an unsigned affidavit does not comply with Practice Book §§ 380-381, it will not be considered by the court in ruling on the City's motion.
"Practice Book § 384 provides that summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Water and Way Properties v. Colt'sManufacturing. Co., 230 Conn. 660, 664, 646 A.2d 143 (1994). "The moving party has the burden of showing the absence of any genuine issues as to all material facts." (Emphasis in original.) Fogartyv. Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1984). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." State v. Goggin, 208 Conn. 606, 616,546 A.2d 250 (1988).
The City contends that it is shielded in this case by the doctrine of governmental immunity. "A municipality itself was generally immune from liability for its tortious acts at common law; Ryszkiewicz v. New Britain, 193 Conn. 589, 593, 479 A.2d 793
(1984); but its employees faced the same personal tort liability as private individuals." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 165, 544 A.2d 1185 (1988). It is this personal liability that the Estate seeks to establish. The personal liability of officers is not unlimited, however, as "`where the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal."' Id., 167, quoting Shore v.Stonington, 187 Conn. 147, 153, 444 A.2d 1379 (1982).
"One exception is when `it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." Id. This "foreseeable victim" exception is advanced by the Estate as its basis for recovery. "We have construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. See Sestito v. Groton, 178 Conn. 520,527-28, 423 A.2d 165 (1979)." Burns v. Board of Education,228 Conn. 640, 646, 638 A.2d 1 (1994). Therefore, in the present case, the relevant inquiry under Burns is whether James Patrick CT Page 11451 Sullivan is within the narrowly defined identified class of foreseeable victims who the City knew or should have known were exposed to imminent harm at the Norwalk train station.
In an effort to carry its burden of proving the non-existence of a dispute as to all facts material to this inquiry; Fogarty v.Rashaw, supra, 193 Conn. 445; the City filed the affidavit of Chief LaBianca. The Chief avers that the City had no knowledge that (1) James Patrick Sullivan would be killed; (2) that the particular murderer intended to kill James Patrick Sullivan; and, (3) that the homicide would take place at a particular time and at a particular location at the train station. This affidavit is sufficient to establish that the City had no knowledge that James Patrick Sullivan was an identified individual who was likely to suffer imminent harm.
Both Sestito and Burns are cases where the Supreme Court determined that a jury question existed as to the municipality's knowledge of the imminent nature of the harm which would be thrust upon the victim. "Sestito involved a policeman who waited and watched a public disturbance without interfering until the plaintiff's decedent was shot. Resolving conflicting testimony on the issue of imminence of harm in favor of the plaintiff, we held that the case should then have been submitted to the jury." Shorev. Stonington, supra, 187 Conn. 153, citing Sestito v. Groton,
supra, 178 Conn. 528.
The present case is factually distinguishable from Sestito.
Here, there were no officers at the scene until after James Patrick Sullivan was killed. In contradistinction to the facts inSestito, which revealed that the officer ignored a raucous mob, there is no evidence that the City had any indication that James Patrick Sullivan's murder was going to occur. Therefore, the City had no knowledge that he was subject to imminent harm.
In Burns, the court held that a subpart of the identifiable victim/imminent harm exception included "narrowly defined identified classes of foreseeable victims." Burns v. Board ofEducation, supra, 228 Conn. 646. There, the Board was in a parens patriae relationship with the student who was injured and also had constitutional and statutory obligations to care for him. Id., 648. Under those "narrow" circumstances, the court held that the student, who sustained injuries during school hours while walking to his guidance counselor's officer after falling on a sheet of ice on the sidewalk, was within the "narrowly defined CT Page 11452 identified" class of foreseeable victims. Id., 642, 650.
Here, there are no constitutional or legislative mandates requiring the City to care for all passengers who happen to pass through the South Norwalk train station. Moreover, the duration of the threat alleged by the Estate is not fleeting in nature as it was with the melting ice in Burns. Rather, the Estate alleges that the general threat of harm was ongoing. In Burns the Supreme Court emphasized the importance of the temporal duration of the threat, writing that "[u]nlike the incident in Evon v. Andrews
[211 Conn. 501, 504, 559 A.2d 1131 (1989), where the plaintiff alleged that the municipality negligently failed to enforce safety codes and inspect the plaintiff's leasehold which was later destroyed in a fire, killing the tenant,] this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly `treacherous' area of the campus." Burns v.Board of Education, supra, 228 Conn. 650. On the foregoing bases,Burns is clearly distinguishable from the facts of this case.
On its facts, this case is most closely analogous to Shore v.Stonington, supra, where the court affirmed the trial court's granting of the municipality's motion for summary judgment. InShore, Officer Sylvia stopped Mr. Cugini. "When the officer asked Cugini where he was going in such a hurry, Cugini replied that he was there to pick up his girlfriend at the V.F.W. Sylvia warned him that if he wanted to keep his driver's license, he had better slow down and should let his girlfriend drive. The officer departed for other duties." Id., 150. The facts indicated that Cugini was visibly under the influence of alcohol or drugs at the time of his encounter with Sylvia. Id. Thereafter, "Cugini, driving along Route 78 in Westerly, Rhode Island at a high rate of speed, struck a vehicle being operated by the plaintiff's decedent, Sherry Shore. Mrs. Shore died from the injuries suffered as a result of the collision." Id., 151. Under these facts, the court held that the plaintiff had failed to make a showing that the officer should have recognized that there was imminent harm to be inflicted upon an identifiable victim. Id., 156-57.
The facts of this case establish that the City's contact with James Patrick Sullivan and his murderer was even more limited than the confrontation found to be insufficient in Shore. Here, there is no evidence that the City had any knowledge that the murderer would be lurking at the Norwalk train station. CT Page 11453 Furthermore, there is no evidence that James Patrick Sullivan, individually, would suffer imminent harm if certain remedial actions were not taken by the City. As a result, Shore strongly supports the City's position in this case.
Accordingly, based on the principles of law set forth inSestito, Shore and Burns, the court grants the City's motion for summary judgment since the Estate has not established that James Patrick Sullivan was an identifiable victim likely to be known by the City to be in imminent harm.
Stodolink, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 11460