[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CHIEF CLERICS.
After the presentation of the plaintiffs' case, the defendants moved for directed verdict in this negligence action. The defendants have moved for a directed verdict in the instant matter on two grounds. First, they claim that the plaintiffs have failed to present a legally cognizable cause of action. Relying on a number of Connecticut Superior Court decisions, the defendants argue that the claims for emotional distress presented by the plaintiffs do not support any recognized cause of action. Second, the defendants argue that even if the plaintiffs have presented a sustainable claim, the defendants are immune from liability pursuant to the doctrine of governmental immunity. The plaintiffs argue against the granting of the motion stating that they have presented a valid, legal cause of action, namely, the negligent infliction of emotional distress cause of action. Also, the plaintiffs argue that any issues of immunity should go to the jury because whether the defendants were acting in a discretionary or governmental capacity is a matter for the jury to resolve and whether any of the exceptions to the immunity defense apply is also a matter for the jury to decide. For reasons more fully explained, herein, this court grants the defendants motion.
I. RELEVANT BACKGROUND
By way of background, initially, the court deferred ruling on the motion after the close of the plaintiffs case. Once the defense rested, the court reconsidered the motion. During the case the plaintiffs and the defendants presented the following evidence upon which a jury might reasonably rely. The plaintiffs were parents of a 37 year old son, who resided with them from October 31, 1998 to April 8, 1999. Prior to returning to Connecticut, the son, Joseph Fanfarelli, had "some problems". Those problems, apparently, related to substance abuse. During the time that he was residing with his parents Joseph Fanferelli worked and led an apparently sober lifestyle. He had dinner with his parents on a regular basis, attended church with them, and visited family with them. The plaintiffs were unaware of any social connections Joseph might CT Page 14252 have renewed in New Haven, other than with his brother, who is and was at all pertinent times a firefighter in New Haven.
On April 8, 1999, Joseph left his parents home, saying that he was going out for a beer. He never returned. On April 14, 1999 the plaintiffs reported Joseph missing with the West Haven Police Department. The plaintiffs made at least two follow-up calls to the West Haven Police regarding this report. The plaintiffs also called local area hospitals, but were unable to get any information.
Joseph Fanfarelli's body was found in New Haven on April 8, 1999 and transported to the morgue. On April 9, 1999, the New Haven Police Department was informed about the body. All deaths in New Haven are initially assigned to the Investigative Services Unit. Detective Clarence Willoughby, one of the officers in that unit, was assigned to the Fanfarelli case. He investigated and learned the name and date of birth of the decedent. Detective Willoughby then, over the course of the next five days, retrieved two addresses from databases for the decedent, neither of which were accurate; spoke with a missing persons officer in New Haven, who had no helpful information; and determined that the decedent had not died as a result of "foul play." Detective Willoughby, in accordance with the custom of the department, (the Investigative Services Unit, typically handles cases involving violent death) transferred his file to the officer in charge of "sudden deaths". Detective Willoughby's active involvement in the case was from April 9 to April 14, 1999. The officer, in charge of "Sudden Deaths" was Detective Wright, who coincidentally, had been Detective Willoughby's partner for a number of years, previously. The two officers did not have any communication about the Fanfarelli file until April 28, 1999, when Detective Wright informed Detective Willoughby that he was making notification of Joseph Fanfarelli's death to the plaintiffs. Detective Wright notified the plaintiffs of the decedent's death on April 28, 1999. Detective Willoughby authored and typed a closeout report, memorializing that notification had been made. The plaintiffs testified that they were caused extreme emotional distress as a result of not being notified of their son's death for the 14 days after they filed the missing person's complaint.
There are no regulations in the New Haven Police Department regarding how and when the next of kin of decedents are to be notified. Detective Willoughby testified that it is common sense that one would want to notify the family of the deceased, and that he and other officers try to do this.
The operative complaint contains two counts relevant to this motion. CT Page 14253 Those allegations assert claims for negligent infliction of emotional distress against Detective Willoughby and the City of New Haven, as the employer of Detective Willoughby. The only New Haven Police Officer who was sued in connection with this action was Detective Willoughby. The only witnesses in the trial were the plaintiffs, Rachel Fanfarelli and Salvatore Fanfarelli, their other son, Gerald Fanfarelli, and the defendant, Detective Clarence Willoughby.
II LEGAL STANDARD
A directed verdict is justified when, on the evidence, viewed in the light most favorable to the plaintiff, the jury could not reasonably and legally reach any other conclusions than that embodied in the verdict as directed. Petyan v. Ellis, 200 Conn. 243, 244, 510 A.2d 1337 (1986). Also, verdict may be directed when the decisive issue is one of law.Simmons v. Southern Connecticut Gas Co., 7 Conn. App. 245, 250,508 A.2d 785 (1986). "Where the judgment in a case heard before a jury depends wholly on a question of law, so that any other verdict than the one so rendered would inevitably be set aside upon review, it has long been the practice for the judge to direct the jury to bring in a particular verdict." People's Savings Bank v. Borough of Norwalk,56 Conn. 547, 556, 16 A. 257 (1888).
III ISSUES PRESENTED
The issues presented by the motion are: whether the plaintiffs have presented sufficient facts to establish a viable cause of action; and whether the defendants are entitled to governmental immunity.
The court grants the defendants motion for directed verdict for the following reasons. First, the plaintiffs have failed to establish that the defendants owed any duty to the plaintiffs. Second, even presuming a duty had been established, the defendants are entitled to immunity under the doctrine of governmental immunity.
A. Whether the Plaintiffs Have Proven a Viable Cause of Action
While the defendants were incorrect in their assertion that the plaintiffs had failed to present a legally cognizable cause of action, they still present a meritorious argument because the cause of action asserted was inadequately supported by the evidence. Negligent Infliction of Emotional Distress is a cognizable cause of action in Connecticut. As a claim for negligence, one of the crucial elements needed to prove this claim is proof of the existence of a duty. The plaintiffs argue that the issue of duty is one that may be presumed from the evidence. However, the CT Page 14254 court finds no support for this in the records. Nor does the court find support for the plaintiffs contention that the issue of duty is one which should be submitted to the jury. The violation of a duty is a matter for the jury to resolve, however, the decision of whether a legal duty exists is to be made by the court. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 544 A.2d 1185 (1988).
Existence of Legal Duty
"The test for the existence of a legal duty is twofold. It entails: `(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination on the basis of public policy analysis, of whether the defendant's responsibility, for its negligent conduct should extend to the particular plaintiff in the case..." (Citations omitted.) Del Core v. Mohican Historic Housing Associates, Superior Court, judicial district of New London, Docket No. 020560919 (Hurley, D. Michael JTR, July 9, 2002).
"A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citations omitted.) Burns v. Board of Education, 228 Conn. 640, 646,638 A.2d 1 (1994). "The law does not recognize `a duty in the air.'"Shore v. Town of Stonington, 187 Conn. 147, 151, 444 A.2d 1379 (1982).
"In order to press a negligent infliction of emotional distress claim, a plaintiff must allege facts showing that the defendant negligently breached a duty owed to the plaintiff . . ." (Citations omitted.) DeLeov. Reed, Superior Court, judicial district of Stamford, Docket No. 172435 (January 3, 2000, Hickey, J.).
Reviewing the evidence relevant to the consideration of whether or not the defendants owed the plaintiffs a legal duty, the court finds, only, the testimony of the defendant, Detective Willoughby. Detective Willoughby testified that New Haven Police Officers attempted to notify family members of decedents, and that it was "common sense" to do so. The Detective also testified that there were no departmental rules, regulations or policies regarding this. Detective Willoughby further testified that it was the responsibility of the officer in charge of "Sudden Deaths" to make the notification to family of individuals who did not die as a result of "foul play." CT Page 14255
The plaintiffs did not ask the court to take judicial notice of any statutes, charter provisions, rules or regulations. The plaintiffs have neither cited to nor presented any regulations, policies or rules regarding notification of the next of kin pertaining to individuals who are found dead in New Haven. Nor have the plaintiffs cited to or provided any charter provisions, statutes, or regulations regarding this issue. There is no evidence of any "special relationship" between the defendants and the plaintiffs. Nor is there any evidence of any contractual agreement between the parties. Finally, the plaintiffs have not provided this court with any precedent, in the form of case law, providing a basis for finding a common law duty on the part of the defendants. In fact, there appears to be no case on point directly addressing the issue of victim/decedent family notification by police officers.[1]
There is no basis in law for imposing the type of duty upon the defendants that the plaintiffs urge. Certainly, there is no contractual, statutory or legislative basis. At best, the court would have to construct a common law duty to impose on the defendants. In light of all the considerations, this is not appropriate. Duties imposed upon police departments are typically the result of some legislative or statutory charge. Courts have usually declined to impose a duty in the absence of some such clear directives. See, e.g. Reilly v. D'errico, Superior Court, judicial district of New Haven, Docket No. 930346095 (September 22, 1994, Hartmere, J.) (Court declined to find that there was a legal duty for the defendants to maintain records and documents: "Connecticut's common law does not impart a duty upon the police to preserve police tapes for possible use in civil litigation"); Robbins v. Sitkiewicz, Superior Court, judicial district of Waterbury, Docket No. 990155151 (May 7, 2002, Wolven, J.) (The court, sua sponte, considered whether or not the plaintiff could raise a common law negligence claim against a municipality for the actions of an officer in his investigation of the plaintiffs decedent's death. The court held that in light of the fact that municipalities are generally immune from liability, absent a statutory abrogation of this immunity, no cause of action should lie); Czap v. Townof Newtown, Superior Court, judicial district of Danbury, Docket No. 95322425 (December 18, 1998, Moraghan, J.) (The court found that there was no statutory duty owed by the defendant police officer to seize firearms in a domestic violence case. Therefore, any duty owed was governed by the governmental immunity doctrine); Grant v. City of NewHaven, Superior Court, judicial district of New Haven, Docket No. 382068 (July 28, 1998, Blue, J.) (Court found that plaintiff failed to state a valid legal claim. Plaintiff had alleged that the defendant, Chief of Police, was negligent in failing to require that a garage which towed cars in the city pursuant to a contract with the city, obtain appropriate insurance and an employee of that garage injured the plaintiff. The court CT Page 14256 found there to be no special relationship between the plaintiff and the police chief and therefore, there was no duty owed by the defendant to the plaintiff).
There was no evidence, in the instant case, that the City of New Haven required its officers to notify family members of deceased persons in a certain manner or within a prescribed time. There is no contract between the parties, obligating the defendants to act in a certain manner towards the plaintiffs. There is no statutory or legislative law basis for imposing upon the defendants a duty to notify. For these reasons, this court finds that the plaintiffs have failed to establish the existence of a legal duty. Consequently, the defendants are entitled to a directed verdict on this basis.
B. Governmental Immunity Doctrine
The court next turns to the defendants' second argument. Even if a valid cause of action to exists, the defendants argue that they are immune from liability under the doctrine of governmental immunity. Assuming, arguendo, that the plaintiffs have proven the existence of a legal duty, this court would still grant the motion for directed verdict because the defendants are immune under the doctrine of governmental immunity.
Any discussion of legal duty is necessarily related to the court's consideration of the governmental immunity defense. Municipal employees are generally immune from suits when exercising discretionary rather than ministerial duties. The question of whether a conduct falls under the discretionary or ministerial category involves a consideration of several issues. The plaintiffs argue that these issues are to be determined by the trier of fact, in this case, the jury. To be sure, the Appellate Court has stated that: "[w]hether the act complained of . . . is [discretionary] or ministerial is a factual question which depends upon the nature of the act complained of." (Citation omitted.) Romano v.Derby, 42 Conn. App. 624, 629, 681 A.2d 387 (1996). However, "[t]his statement of the Appellate Court notwithstanding, the Supreme Court `has approved the practice of deciding the issue of governmental immunity as a matter of law.' Gordon v. Bridgeport Housing Authority, 208 Conn. 170
(1988). See also, Evon v. Andrews, 211 Conn. 501, 559 A.2d 1131 (1989);Heigl v. Board of Education, 218 Conn. 1 (1991). Specifically, in Gordon the Court upheld a trial court's grant of a motion to strike on the grounds that the defendant owed no duty to the plaintiffs, Id., 171, and that the operation of a municipal police department is a discretionary governmental function as a matter of law. Id., 180." Carrier Enterprisesv. Town of Wallingford, Superior Court, judicial district of New CT Page 14257 Britain, Docket No. CV 94 460521 (Shortall, J., Mar. 8, 1999).
"[A] municipal employee [now] has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word `ministerial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) Evon v. Andrews, 211 Conn. 501, 505,559 A.2d 1131 (1989).
There is no evidence in this case that a duty to notify the next of kin, if it exists, is to be performed in a prescribed manner without the exercise of judgment or discretion. Therefore, any duty, on the part of the defendants to notify the plaintiffs would fall under the rubric of discretionary acts. As such, those acts would render the defendants immune from liability except under three narrow circumstances.
"The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) Evon v. Andrews, supra, 211 Conn. 505.
The plaintiffs argue that if the doctrine of governmental immunity applies, then their case falls under the first exception: the identifiable person/imminent harm exception. After reviewing the pertinent case law, this court finds this argument unpersuasive. It is true, that the plaintiffs probably fall within a category of persons who would be deemed "identifiable." However, this court cannot find any support for concluding that the plaintiffs have presented sufficient facts to support a claim for the "imminent harm" part of the exception. Most of the cases which involve this exception address issues of physical danger or injury for which there is a risk, limited in duration, which can be avoided by conduct of the defendants. This court found no cases to support the conclusion that such harm includes the more generic, broadly claimed emotional distress claims asserted by the plaintiffs.
"[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense CT Page 14258 . . . [where] resolution of those factual issues is properly left to the jury." Mulligan v. Rioux, 229 Conn. 716, 736, 643 A.2d 1226 (1994)."Purzycki v. Fairfield, 244 Conn. 101, 107, 708 A.2d 937 (1998).
In the present matter, there are no unresolved or disputed factual issues which would preclude the resolution of this matter by the court as a matter of law. The undisputed facts pertaining to this issue are: the plaintiffs were the parents of the decedent and as such, they were the individuals who would receive notification of his death; the plaintiffs were, as parents, understandably distraught that their son was missing; the plaintiffs were, as parents, understandably and predictably distraught to learn that their son had died; and the plaintiffs were, as parents, understandably distraught to learn that their son's body had been retrieved 20 days before they were notified of his death. There was no evidence presented regarding what level of harm one would expect after a failure to notify. Nor was there evidence about the nature of the harm which the defendants did or would reasonably be expected to foresee.
"The identifiable person-imminent harm exception applies not only to identifiable individual but also to narrowly defined classes of foreseeable victims.... In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." Colon v. NewHaven, 60 Conn. App. 178, 184, 758 A.2d 900 cert. denied 255 Conn. 908,763 A.2d 1034 (2000). Courts have also considered "... the seriousness of the injury threatened . . . the duration of the threat of injury and whether the persons at risk had the opportunity to protect themselves from harm." Burns v. Board of Education, 228 Conn. 640, 647-48, 638 A.2d 1
(1994).
In the case of Colon v. New Haven, the court discussed the limiting parameters of the "identifiable person/imminent harm exception." Ultimately, the appellate court found that the trial court had erred in finding that the plaintiff was not an identifiable person. After discussing the various appellate court decisions addressing this exception, the court concluded that because "Colon was subject to danger that was limited in duration and . . . the potential for harm was significant and foreseeable" the imminent danger exception applied. Colonv. New Haven, supra, 60 Conn. App. at 187.
Applying similar reasoning, the court in Purzycki v. Fairfield, held that because "the imminent harm was limited to a one-half hour period each day when the second grade students were dismissed to traverse an CT Page 14259 unsupervised hallway, when school administrators were aware that unsupervised children are more likely to run and engage in horseplay leading to injuries," the exception to the governmental immunity doctrine might apply, and the trial court was incorrect in deciding the issue as a matter of law, 244 Conn. 101, 111, 708 A.2d d 937 (1998).
Courts have required a limitation on the duration of the risk of harm, before applying the exception. The Court in Evon, for an example, concluded that the allegations of the complaint did not rise to the level of imminence so as to come within the imminent harm exception, because "[the risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. . . . In the present instance, the fire could have occurred at any future time or not at all."Evon v. Andrews, supra, 211 Conn. at 508. Consistently, the court observed in Shore v. Stonington, that "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." 187 Conn. 147, 157, 444 A.2d 1379 (1982).
In the instant matter, the scope of the potential emotional harm was not limited in duration. The potential for significant harm was unascertainable. And, the identity and scope of potential victims was potentially broad. There is no way to say, by a preponderance of the evidence, when the imminent harm — the emotional distress — would have occurred in a case such as this, if it would occur at all. Does notification within one day create a different potential for harm than notification in five or ten days? How does one ascertain this? There was no evidence presented on this issue. Further, what is the potential harm or injury resulting from the failure to notify? Is it different from and more significant than the harm that an individual would experience from timely learning of the death of a loved one? Should the defendants foresee this? Who should reasonably be included within the group of potential persons (parents, siblings, spouses, children)? The unanswered questions to these issues the appellate court directs this court to consider when deciding the applicability of the identifiable person/imminent harm exception lead this court to conclude that the exception should not be applied in this case.
Because this court finds, as a matter of law, that the identifiable person/imminent harm exception does not apply in this case, the governmental immunity doctrine bars this action. As such, the defendants are entitled to a directed verdict.
For the reasons set forth herein, this court directs verdict for the defendants, Detective Clarence Willoughby and the City of New Haven, on CT Page 14260 both counts against them in the complaint.
 ___________________ Angela Robinson-Thomas, Judge